IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Janice M. Kasprzak,  Case No. 3:04CV7314

    Plaintiff

v.  ORDER

DaimlerChrysler Corp., et al.,

    Defendants

Plaintiff Janice Kasprzak has filed a complaint for hostile work environment sexual harassment, retaliation, and intentional infliction of emotional distress against defendant DaimlerChrysler (D/C) as well as a claim for intentional infliction of emotional distress against Theodore Stelmaszak.

Pending is defendants' motion for summary judgment on all claims. For the reasons that follow, defendants' motion will be granted as to the retaliation and intentional infliction of emotional distress claims against the Company and denied as to all other claims.

## Background

Kasprzak has worked for D/C since at least 1980. She is currently employed at the company's Toledo North Assembly Plant as a general production operator. From March, 2001, to May, 2002, Kasprzak worked on Team 4 in the paint shop alongside defendant Stelmaszak.

Plaintiff alleges that over the course of nearly a year, Stelmaszak engaged in a variety of sexually offensive activities. Beginning in June 2001, he made frequent telephone calls to plaintiff's home. The following month, plaintiff claims Stelmaszak told her that he was exercising so that he would "have enough stamina to be able to do [her] all night long." She reported both incidents to her team leader, Jeff LaPlante.

In August, 2001, plaintiff claims Stelmaszak told her that he was planning on dancing for her on her birthday in his underwear. Kasprzak claims he even went so far as to ask a mutual friend of theirs, Sherry Martin, to embroider a pair of underwear with the words "Happy Birthday, Jan." The mutual friend confirms the incident. Kasprzak reported the episode to Marquis Gambrell, an area advisor at the plant. Later that month, Stelmaszak approached plaintiff and placed a decal on her breast.

In September, 2001, Stelmaszak allegedly told Kasprzak that he would like her to put hickies all over his neck so that his wife would throw him out of the house. Later that month plaintiff claims that Stelmaszak grabbed her by the waist and pulled her towards him in a back corridor. Before he had a chance to do anything further she was able to knock him down. Kasprzak immediately reported the incident to Gambrell and LaPlante.

In January, 2002, due to an injury, plaintiff was working in another part of the facility. She claims that Stelmaszak sought her out, told her she belonged to him, and that he wanted her back up where he was working.

Kasprzak also alleges that Stelmaszak approached her two months later and told her that her hair was "really sexy". He then told her that he was going to go home, take a shower, masturbate, and scream her name. Kasprzak immediately reported this to Scott Weishaar, another area advisor and her boss at the time.

Soon thereafter, Kasprzak claims that Stelmaszak again telephoned her home. After she reported this incident to Curtis Collins, a member of management, Stelmaszak berated her on two separate occasions. Plaintiff reported this to Weishaar and Collins and made a formal complaint to Patty Bradley, another member of management. She specifically requested the Company transfer Stelmaszak out of the

2

paint shop. The company then began an investigation.[1]

During that investigation, D/C interviewed both plaintiff and Stelmaszak. It also interviewed John Vanetta, Jeff LaPlante, Theresa Leonard, and Mike Zietoun, all coworkers of both Stelmaszak and Kasprzak. The company, however, did not interview Janet Christy, Sherry Martin, or Roger Jackson, all witnesses plaintiff specifically suggested the company interview.

At the end of its investigation, D/C concluded that Stelmaszak and Kasprzak had engaged in a consensual relationship. Nevertheless, the company reassigned plaintiff, rather than Stelmaszak, to Team 2, as a replacement for another worker. She was allegedly forbidden from going near Stelmaszak's team, though she claims he frequently came to her work area. She reported this to Weishaar, but claims nothing was done about it.

## Discussion

Defendants have moved for summary judgment on all claims.  Summary judgment is appropriate where the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court draws all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving

---

[1] Plaintiff also alleges Stelmaszak engaged in other sexually offensive actions. Specifically, she claims that Stelmaszak gave her unwanted cards, flowers, and candy. In addition, she also states in her affidavit that Stelmaszak passed his hand along her buttocks on three separate occasions. Plaintiff, however, did not execute her affidavit until after defendants filed their motion for summary judgment. "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453 (6th Cir. 1986). Arguably plaintiff's affidavit and deposition are inconsistent. Thus I will not consider the affidavit. I will, however, still consider the incident in which Stelmaszak allegedly placed a decal on plaintiff's breast because she also offers the deposition testimony of Edwin Jackson to support that assertion.

party. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir. 1997). The moving party bears the initial burden of informing the District Court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. V. Catrett*, 477 U.S. 317, 323. Once the moving party satisfies that burden the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### 1. Plaintiff's Sexual Harassment Claim Against the Company

Plaintiff has brought her sexual harassment claim under Title VII of the Civil Rights Act of 1964 and Ohio Revised Code § 4112.02. Federal standards used to analyze Title VII violations also apply to violations of § 4112. *Little Forest Med. Ctr. of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St.3d 607, 609 (1991).

To prevail on a sexual harassment claim based upon the actions of a non-supervisory co-worker a plaintiff must show: 1) she is a member of a protected class; 2) she was subjected to unwelcome sexual harassment; 3) the harassment was based on her sex; 4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and 5) the Company knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action. *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 50 (6th Cir. 1996). The Company challenges only plaintiff's ability to satisfy prongs 4 and 5.

### A. Interference with Plaintiff's Work Performance/Hostile Work Environment

D/C asserts that the plaintiff cannot show that Stelmaszak's alleged conduct unreasonably interfered with her work performance and created a hostile work environment.

Courts consider a totality of the circumstances when analyzing this element of a sexual harassment claim. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Among the factors considered are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* Plaintiff need not show specifically that her work performance suffered. The Supreme Court noted in *Harris*, 510 U.S. at 23:

> A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.

The conduct Kasprzak alleges goes beyond simple teasing, offhand comments, and isolated incidents. She has presented evidence that Stelmaszak repeatedly engaged in unwelcome sexually suggestive conduct. Some of that conduct, particularly his grabbing of Kasprzak around the waist, berating her at work, and comments to her in March, 2002 could be found be a jury to have been "severe", "physically threatening", and/or "humiliating". *Harris* at 23.

Moreover, plaintiff has testified at her deposition that her fear of Stelmaszak made it difficult for her to "watch for the car" along the assembly line, interfering with her ability to perform her job. Thus,

5

Kasprzak has at least created a genuine issue of material fact as to this element of her sexual harassment claim

### B. The Company's Response

The Company also argues that it is entitled to summary judgment because there is no genuine issue of material fact as to whether "it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 348 (6th Cir. 2005). Relying on *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 873 (6th Cir. 1997), the Company argues: 1) that all that is required of it is "good faith remedial action"; 2) mere negligence in fashioning a remedy is insufficient to render an employer liable; and 3) that judgment for an employer is appropriate where its "remedy [is] not so inadequate and inappropriate as to display an attitude of permissiveness."

The Company's reliance on *Blankenship* is misplaced. Earlier this year, the Sixth Circuit recognized that *Blankenship* had been overruled. *Collette v. Stein-Mart, Inc.* 126 Fed.Appx. 678, 684 at n.3 (6th Cir. 2005). The Sixth Circuit stated that "an employer may be held liable when its remedial response is merely negligent, no matter how well-intentioned." *Id*. Thus the Company's response is governed by a negligence standard, not the more lenient good faith standard.

Under this view, Kasprzak has raised numerous fact issues concerning D/C's response which make summary judgment inappropriate. First, a jury might find that the company's response was timely. Stelmaszak's conduct began in June, 2001. The plaintiff alerted several members of management after incidents in June, August, and September, 2001, and again in March, 2002. The Company did not begin an inquiry until May, 2002, after Kasprzak filed a formal complaint. Given that amount of notice, there

exists a genuine issue of material fact as to whether D/C's initial response, even absent a formal sexual harassment complaint from the plaintiff, was adequate.

Second, even if the Company's response was timely, there also remain issues of fact as to whether the company's formal inquiry was itself an adequate response to Stelmaszak's conduct. D/C interviewed both the plaintiff, Stelmaszak, and several of their co-workers, none of whom confirmed the plaintiff's allegations.

The company did not, however, interview other co-workers whom Kasprzak specifically identified, all of whom in one way or another confirm her allegations. In light of this failure, a jury could find that the company improperly transferred plaintiff, rather than moving Stelmaszak to another shift, assignment, or department. In any event, a jury could find that the Company's formal inquiry and transfer of Kasprzak were an inadequate response to Stelmaszak's conduct. Thus summary judgment is inappropriate on this claim.

### 2. Plaintiff's Retaliation Claim Against the Company.

To sustain her retaliation claim, plaintiff must show: 1) that she engaged in protected activity; 2) that the company was aware of the activity; 3) that she suffered a materially adverse employment action subsequent to or contemporaneous with the protected activity; and 4) that there is a causal relationship between the protected activity and the adverse employment. *Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 463 (6th Cir. 2001). D/C argues that Kasprzak cannot establish the third and fourth elements.

Kasprzak claims that the following conduct constitutes adverse employment action: 1) restricted access to certain areas of the plant; 2) denial of a paid absence date; 3) loss of seniority on her new team; 4) lost hours on her new team; 5) loss of overtime hours; and 6) failure to transfer her to the body shop.

The company's actions are not sufficiently adverse to enable a jury to find for the plaintiff on as to the third and fourth elements. "[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or alteration of job responsibilities." *Bowman v. Shawnee State University*, 220 F.3d 456, 461-462 (6th Cir. 2000).

Plaintiff's restricted access, loss of seniority, lost hours, and lost opportunity for overtime are not actionable as adverse employment action because they all resulted directly from the company's transfer of Kasprzak in response to her sexual harassment claim. Transfers intended to respond to and resolve an employee's problems with another employee do not constitute adverse employment action. *Walker v. Nat'l Revenue Corp.*, 43 Fed.Appx. 800, 805 (6th Cir. 2002). It follows that those effects incident to Kasprzak's transfer are not independently actionable.[2]

The remaining actions plaintiff cites are also not adverse employment actions. Kasprzak alleges that the Company refused to transfer her to the body shop even though it transferred others with less seniority. "A refusal to grant a change requested by an employee is not an adverse employment action unless the employee has a right to the requested change by law or through the terms and conditions of [her] employment." *Barrett v. Lucent Technologies, Inc.*, 36 Fed. Appx. 835, 842 (6th Cir. 2002). Plaintiff offers no evidence that she had a right to the transfer to the body shop. Thus the Company's denial of her transfer request is not actionable.

Finally, Kasprzak contends that the Company wrongly denied her a paid absence day, which constitutes adverse employment action. If employment actions do not involve some "significant detriment, they are not materially adverse, and, thus, not actionable." *Roelen v. The Akron Beacon Journal*, 199 F.

---

[2] This conclusion is not inconsistent with the possibility that the jury could find that the circumstances about which the plaintiff complains constituted, in part at least, an insufficient response to plaintiff's complaints of sexual harassment.

Supp. 2d 685, 692 (N.D. Ohio 2002). Here, plaintiff acknowledges that she was told that other employees with more seniority had already requested this date. In addition, she was granted paid absence on a different day without incident. This inconvenience to Kasprzak is de minimus and therefore not materially adverse or actionable. *Bowman*, 220 F.3d at 462.

Because plaintiff cannot show that she was subject to sufficiently adverse employment actions, defendants' motion for summary judgment as to plaintiff's retaliation claim will be granted.

### 3. Intentional Infliction of Emotional Distress

Plaintiff claims that the conduct to which she was subjected was so severe, pervasive, and offensive that she is entitled to recover for intentional infliction of emotional distress against both defendants.

The elements of a claim for intentional infliction of emotional distress are:

> (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

*Burkes v. Stidham*, 107 Ohio App.3d 363, 375 (1995).

Defendants argue that because no jury could find that Stelmaszak's conduct was "so extreme and outrageous as to go beyond all possible bounds of decency and can only be described as atrocious and utterly intolerable in a civilized society", they are entitled to summary judgment on this claim. I disagree.

Plaintiff has submitted extensive evidence of a year-long pattern of objectionable behavior on the part of Stelmaszak. This behavior includes particularly vulgar expressions, unwanted physical contact, and repeated badgering. I cannot conclude that no jury could find this conduct "extreme and outrageous."

9

D/C, however, cannot be held liable vicariously for this claim. Kasprzak asserts that the Company should be liable because it "[did] not react to [her] allegations of sexual harassment." Plaintiff misconstrues the legal standard. The company can only be held liable if it "promoted or advocated" Stelmaszak's alleged behavior. *Mullholand v. Harris Corp.*, 1995 WL 730466 at *6 (6th Cir. 1995). Kasprzak offers no evidence that the Company did so, and therefore the Company is entitled to summary judgment on this claim.

## Conclusion

In light of the foregoing, it is hereby

ORDERED THAT the defendants' motion for summary judgment be granted as to the claims for retaliation and intentional infliction of emotional distress against defendant DaimlerChrysler and denied as to all other claims.

So ordered.

/s/James G. Carr
James G. Carr
Chief Judge